IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>       Plaintiff, )<br>)<br>v. )<br>)<br>CHRISTOPHER JUSTIN SMITH and )<br>MATTHEW CALEB LANGLEY, )<br>)<br>       Defendants. ) | Case No. No. CR-21-109-D |

# FINDINGS OF FACT, CONCLUSIONS OF LAW,
## <u>AND ORDER</u>

This matter comes before the Court on Defendants' Motions to Suppress Evidence [Doc. Nos. 33 and 34], filed pursuant to Fed. R. Crim. P. 12(b)(3)(C) and timely opposed by the government. On August 19, 2021, the Court held an evidentiary hearing at which Defendant Christopher Smith appeared personally and through appointed counsel, Eddie Valdez, and Defendant Matthew Langley appeared personally and through appointed counsel, Lance Phillips. The government appeared through Assistant United States Attorney Danielle Connolly. The Court heard the testimony of an officer of the Oklahoma Highway Patrol (OHP), Trooper Cody Creswell, and received three audio-video recordings made by a camera in his patrol vehicle. Attorneys for the parties presented oral arguments and adopted their written briefs. Upon consideration of the evidence, the case record, and the parties' arguments, the Court finds and rules as follows.

## FINDINGS OF FACT

The Indictment charges in Count 1 that on October 2, 2020, Mr. Smith knowingly possessed four firearms after a felony conviction, in violation of 18 U.S.C. § 922(g)(1), and in Count 2, that Mr. Langley knowingly possessed the same firearms while being an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3). Defendants move to suppress the firearms that were seized from a pickup truck in which they were traveling on October 2, 2020 – a Glock pistol in the passenger compartment and two other pistols and a rifle in the cargo compartment – after Trooper Creswell stopped the vehicle for a traffic violation. Trooper Creswell testified at the hearing concerning the events leading up to the traffic stop and occurring during his detention of Defendants. The government also played a recording made by the camera located near the dashboard of his patrol vehicle. This evidence establishes the following facts pertinent to the Motions, as found by the Court.

Trooper Creswell is an OHP patrol officer with four years of experience; he is assigned to the panhandle region of Oklahoma and regularly patrols the area for public safety issues. Around noon on October 2, 2020, Trooper Creswell was traveling westbound on U.S. Highway 412 (also U.S. Highway 270) on a routine, uniformed patrol in Harper County, Oklahoma. These highways provide a well-known drug trafficking corridor between Oklahoma and Colorado. Trooper Creswell saw a black Chevrolet Silverado pickup truck traveling westbound ahead of him, behind a black Nissan Titan pickup truck; both vehicles were traveling behind a slower-moving semi-trailer truck. When the vehicles reached a three-lane stretch of the highway with two westbound lanes

(and one eastbound lane), Trooper Creswell observed the Nissan pickup straddling the line between the driving and passing lanes and preventing the Chevrolet pickup from passing. Trooper Creswell believed the driver of the Nissan truck had failed to maintain a single lane as required by Okla. Stat. tit. 47, § 11-309(1). This driving behavior is a safety concern, and violations are actively enforced. Trooper Creswell decided to issue a traffic citation to the Nissan driver, later identified as Mr. Langley.

Trooper Creswell first flashed his auxiliary lights to signal the Chevrolet pickup to move to the right so he could pass, and he waited a short time to activate the emergency lights on his patrol car in order to reach a better stretch of the highway to conduct a traffic stop. Activating the emergency lights automatically triggered a dashboard camera in the patrol unit to begin recording; pursuant to OHP policy, the recording captures a time period from 30 seconds before the lights or sirens are activated until the trooper manually stops the recording. As a result, Trooper Creswell's dashcam recording does not show the traffic violation he observed, but only shows the Chevrolet pickup moving aside and the Nissan pickup traveling in the driving lane until the driver finally pulled off the highway and came to a stop.

For officer safety, Trooper Creswell approached the stopped vehicle from the passenger side, away from the flow of traffic. When the passenger opened the window, Trooper Creswell immediately smelled a strong odor of burnt marijuana emanating from the passenger compartment. In addition to Trooper Creswell's testimony, the audio recording captured his comments during the initial contact with the occupants of the vehicle about the obvious smell and the presence of marijuana. The passenger, later identified as

3

Mr. Smith, was extremely nervous and responded to a request for identification with shaking hands, which led Trooper Creswell to ask if Mr. Smith had warrants. Mr. Smith stated he had Colorado warrants that did not authorize extradition from out of state.

Trooper Creswell then instructed Mr. Langley to step out of the vehicle and join him in the patrol car. Trooper Creswell did not handcuff Mr. Langley and directed him to sit in the passenger seat. They engaged in casual conversation while Trooper Creswell ran computer checks for driver's license status, outstanding warrants, and vehicle registration. Trooper Creswell confirmed that Mr. Smith provided accurate information regarding the Colorado warrants. The pickup had a Tennessee license plate and was registered to a third party whom Mr. Langley identified as a good friend.

Mr. Langley appeared very nervous throughout the conversation, despite Trooper Creswell's efforts to deescalate the situation by, among other things, stating he intended only to issue a warning for the traffic violation. Mr. Langley admitted he had smoked marijuana "this morning," he had more marijuana in a bag in the pickup, and he regularly used it to treat a medical condition that caused severe headaches on a daily basis. Mr. Langley did not have a medical marijuana card but was self-treating his condition. Mr. Langley first denied having weapons or contraband in the pickup but later stated he had a Glock pistol located between the driver's seat and center console. Mr. Langley acknowledged that Mr. Smith was prohibited from possessing it due to his criminal history.

Trooper Creswell returned to the pickup, ordered Mr. Smith out of the vehicle, checked Mr. Smith for weapons, instructed him to wait a safe distance away from traffic, and removed a fully loaded Glock pistol from the spot described by Mr. Langley. Trooper

4

Creswell disarmed the gun and returned to his patrol car to run a computer check on it. By this point, Trooper Creswell had observed evidence of marijuana use in the cab, including (in addition to the smell) the presence of ash, shake, and a burnt joint, and Mr. Langley admitted he had marijuana in a bag in the back seat. Trooper Creswell informed Mr. Langley, as he had done earlier in the encounter, that the odor and presence of marijuana in the vehicle gave him probable cause for a search. This time, however, Trooper Creswell stated he intended to conduct a search. He based this decision on three primary considerations: Defendants' interstate travel through a drug trafficking corridor; Mr. Langley's continued nervousness despite efforts to defuse the situation; and his admission that marijuana was present in the vehicle. Trooper Creswell also noted the presence of a concealed firearm in close proximity to a controlled substance.

    Trooper Creswell proceeded to search a suitcase located in the cab of the pickup. To conduct the search, Trooper Creswell removed the suitcase, carried it to the rear of the pickup (within view of the dashcam), and opened the tailgate to provide a surface to lay the suitcase flat and inspect its contents. Trooper Creswell did not find contraband in the suitcase, but opening the enclosed cargo compartment revealed a large number of bags and containers.[1] Trooper Creswell proceeded to open additional bags located in the bed of the pickup and found evidence of drug trafficking, such as scales with methamphetamine residue, and additional firearms and ammunition. Trooper Creswell placed Defendants

---

[1] Unknown to Trooper Creswell at the time but captured by the video, Mr. Langley made a telephone call from the patrol car using an Apple watch device. Mr. Langley reported what was happening and admitted he was extremely nervous ("freaking the f-- out").

under arrest and arranged their transportation to a county detention facility,[2] and towing of the pickup to a secure location for a secondary search. The search uncovered the firearms listed in the Indictment, other weapons, thousands of rounds of ammunition, narcotic drugs (methamphetamine, heroin, and oxycodone pills), drug paraphernalia, multiple cell phones, prepaid credit cards, multiple identification cards, computers, and $31,000 in currency.

## CONCLUSIONS OF LAW

The government bears the burden to prove the validity of a warrantless search. *See United States v. Neugin*, 958 F.3d 924, 930 (10th Cir. 2020); *see also Florida v. Royer*, 460 U.S. 491, 500 (1983). In this case, the government seeks to justify Defendants' initial seizure as an investigative detention permitted by *Terry v. Ohio*, 392 U.S. 1 (1968). To determine if a *Terry* stop was constitutionally permitted, courts ask both "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 20. These principles govern the legality of a traffic stop. *See United States v. Martinez*, 910 F.3d 1309, 1313 (10th Cir. 2018); *United States v. Polly*, 630 F.3d 991, 997 (10th Cir. 2011); *United States v. Winder*, 557 F.3d 1129, 1133-34 (10th Cir. 2009).

Tenth Circuit "precedents leave no room to doubt the validity of a traffic stop based on an observed traffic violation." *Winder*, 557 F.3d at 1135; *see United States v. Martinez*, 910 F.3d 1309, 1313 (10th Cir. 2018). "An observed traffic violation or a reasonable

---

[2] As an intermediate step, Mr. Smith was transported for medical attention, as he exhibited extreme signs of recent drug use.

suspicion of such a violation under state law plainly justifies a stop." *United States v. Gregoire*, 425 F.3d 872, 876 (10th Cir. 2005). "Observed traffic violations necessarily 'afford the quantum of individualized suspicion necessary to ensure that police discretion is sufficiently constrained.'" *Winder*, 557 F.3d at 1135 (quoting *Whren v. United States*, 517 U.S. 806, 817-18 (1996)).

In this case, Trooper Creswell testified credibly that he observed conduct by the driver of the Nissan pickup that he believed was a traffic violation under Oklahoma law of failing to maintain a vehicle in a single driving lane. *See* Okla. Stat. tit. 47, § 11-309.1.[3] The circumstances credibly described by Trooper Creswell – seeing the Nissan pickup straddling two lanes of traffic for a sufficient time to impede another vehicle traveling in the same direction – provided reasonable suspicion that Mr. Langley had violated this statute. Thus, the Court finds that the traffic stop of the vehicle in which Defendants were traveling on October 2, 2020, was constitutionally permissible.

As to a question raised by Defendants regarding the scope of their detention, the focus of the inquiry is "the reasonableness of the traffic stop in light of both the length of the detention and the manner in which it was carried out." *Polly*, 630 F.3d at 997 (quoting *United States v. Valenzuela*, 494 F.3d 886, 890 (10th Cir. 2007)). It is well settled that "officers may ask questions outside the scope of the traffic stop so long as the questions do not appreciably prolong the length of the stop." *Id*. (internal quotation omitted); *accord United States v. Karam*, 496 F.3d 1157, 1161 (10th Cir. 2007). In this case, the Court

---

[3] This statute provides: "A vehicle shall be driven as nearly as practicable entirely within a single lane."

7

finds that Trooper Creswell's detention of Defendants was reasonable in length and scope and the manner in which it proceeded.

Trooper Creswell approached the vehicle to ask for identification and vehicle registration, "which the police are unquestionably permitted to do in the course of a traffic stop," *Polly*, 630 F.3d at 998, and immediately smelled a strong odor of burnt marijuana coming from the cab of the pickup. Trooper Creswell properly asked Mr. Langley to step out of the vehicle and asked about the presence of contraband and weapons. *See Polly*, 630 F.3d at 998; *see also Valenzuela*, 494 F.3d at 889-90.[4] Mr. Langley admitted that he possessed marijuana and a pistol in the vehicle. Under the circumstances, Trooper Creswell was justified in continuing the detention while he investigated the information provided. As discussed *infra*, Trooper Creswell had probable cause to search the vehicle from the moment he smelled burnt marijuana. In short, the Fourth Amendment was not violated by Trooper Creswell's extension of the traffic stop.

Counsel for Mr. Smith seems to argue that the traffic stop was unlawful because it was a ruse for investigating possible drug trafficking offenses without probable cause solely because the highway was a known drug passageway and the Nissan pickup had a Tennessee license plate. However, the fact that a traffic stop was initiated for investigative purposes "is legally irrelevant. In determining whether a traffic stop is constitutional, the officer's subjective intent or good faith does not affect the reasonableness of the stop."

---

[4] When making an investigative stop, a patrol officer is entitled to utilize precautionary measures to ensure officer safety, including the use of handcuffs. *See United States v. Copening*, 506 F.3d 1241, 1248 (10th Cir. 2007).

*Polly*, 630 F.3d at 997 (internal quotation omitted); *see Whren*, 517 U.S. at 813 (precedents "foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"); *United States v. DeGasso,* 369 F.3d 1139, 1143 (10th Cir. 2004) ("The actual motivations or subjective beliefs and intentions of the officer [making a traffic stop] are irrelevant."). Thus, Mr. Smith's pretext argument does not undermine the conclusion that the traffic stop did not violate the Fourth Amendment.

There is no real question that, as soon as Trooper Creswell approached the truck, he detected a strong odor of burnt marijuana coming from the passenger compartment. Tenth Circuit caselaw makes clear that, from that moment, Trooper Creswell had probable cause to search the passenger compartment of the vehicle. *See United States v. Snyder*, 793 F.3d 1241, 1244 (10th Cir. 2015); *United States v. Johnson*, 630 F.3d 970, 974 (10th Cir. 2010). Trooper Creswell did not immediately act on that authority but, instead, conducted the customary activities of a traffic stop and engaged in casual conversation with the driver designed to calm his nervousness and defuse the situation. However, after Mr. Langley disclosed the presence of a loaded Glock pistol beside the driver's seat and continued to exhibit nervous behavior, Trooper Creswell decided to search the vehicle for contraband. Under the totality of the circumstances shown by the evidence, the Court finds that Trooper Creswell was justified in searching the entire vehicle based on probable cause to believe that drug trafficking and firearms offenses were being committed and that the Nissan pickup contained contraband and evidence of unlawful activity.

Trooper Creswell's search of the Nissan pickup was permissible under the automobile exception to the warrant requirement, which "permits law enforcement officers who have probable cause to believe a car contains contraband to search the car without first obtaining a search warrant." *See United States v. Chavez*, 534 F. 3d 1338, 1345 (10th Cir. 2008) (quoting *United States v. Beckstead*, 500 F.3d 1154, 1165 (10th Cir. 2007)); *see also United States v. Ross*, 456 U.S. 798, 824 (1982) ("The scope of a warrantless search of an automobile . . . is defined by the object of the search and the places in which there is probable cause to believe that it may be found."). "Once the officer's suspicions rise to the level of probable cause, they are empowered to search the entire vehicle, including the trunk and all containers therein that might contain contraband." *Chavez*, 534 F.3d at 1345 (quoting *United States v. Bradford*, 423 F.3d 1149, 1160 (10th Cir. 2005)). "Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." *United States v. Benard*, 680 F.3d 1206, 1210 (10th Cir. 2012); *see Chavez*, 534 F.3d at 1344; *Bradford*, 423 F.3d at 1159.

Within the time it took to obtain the necessary information to complete the traffic stop, Mr. Langley informed Trooper Creswell of the presence of a controlled substance and a loaded firearm in the passenger compartment of the truck with Mr. Smith. Combined with these facts, Trooper Creswell knew that Defendants were traveling through a drug trafficking corridor in a vehicle registered in another state, that Mr. Smith was prohibited from possessing firearms, that Mr. Langley was a habitual drug user, that both Defendants exhibited signs of extreme nervousness, and that Mr. Langley remained nervous despite

10

the trooper's best efforts to calm him. Mr. Langley admitted possessing a small amount of marijuana in a bag in the backseat. This confession increased the probability that a greater amount of illegal drugs and evidence of drug trafficking were located in the truck.

The Court rejects Mr. Langley's argument that the smell of burnt marijuana in the passenger compartment limited Trooper Creswell's lawful search to the cab of the pickup. *See* Def. Langley's Mot. at 5-6 (quoting *United States v. Wald*, 216 F.3d 1222, 1226 (10th Cir. 2000) ("although the smell of burnt marijuana emanating from a vehicle provides probable cause to search the passenger compartment of that vehicle, if that search fails to uncover corroborating evidence of contraband, probable cause to search the trunk of the vehicle does not exist"). In this case, the totality of circumstances involved much more than the smell of burnt marijuana and evidence of past use.

Here, as in *Bradford*, a driver facing a possible search of his vehicle admitted to a trooper the presence of a small amount of marijuana in the vehicle. This admission changed the calculus. "A reasonable officer would think that a suspect might confess to a small amount of drugs in order to avoid an investigation which would reveal a much larger amount of drugs." *Bradford*, 423 F.3d at 1159. This reasonable inference led the Tenth Circuit to conclude in *Bradford* that the suspect's admission there was marijuana in the vehicle, coupled with her nervousness and evasiveness, "gave rise to probable cause there would be contraband in the trunk." *Id*. The court further stated: "[T]here was no need for corroboration of the smell of marijuana" after the driver admitted possessing marijuana because "it was clear there was marijuana in the passenger compartment." *Id*. at 1160. Once the actual existence of drugs was established, the trooper "had probable cause to

11

search anywhere else in the car that contraband might be present, including the trunk." *Id*. Similarly in this case, viewing the totality of the circumstances known to Trooper Creswell, the Court finds that he had probable cause to believe Defendants' vehicle contained contraband and evidence of illegal drug trafficking and firearms offenses, and Trooper Creswell was legally permitted to search the entire vehicle, including bags in the cargo area.

For these reasons, the Court finds that the traffic stop and investigatory detention of Defendants by Trooper Creswell were justified, that their detention was reasonably related to the circumstances that justified it, and that Trooper Creswell had probable cause to search the entire vehicle in which they were traveling. Therefore, the Court finds no Fourth Amendment violation occurred and the firearms were lawfully seized.

## ORDER

IT IS THEREFORE ORDERED that Defendants' Motions to Suppress Evidence [Doc. Nos. 33 and 34] are DENIED.

IT IS SO ORDERED this 31st day of August, 2021.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

12